# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| ARCH INSURANCE COMPANY, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | Civil No. 3:15-cv-626 |
| ) | Judge Aleta A. Trauger |
| ) | |
| CAD ENGINEERING RESOURCES d/b/a ) | |
| CER GROUP NORTH AMERICA ) | |
| CORPORATION and RAYMOND LEE ) | |
| WAGNER, JR., ) | |
| ) | |
|     Defendants. ) | |

## MEMORANDUM & ORDER

Defendant CAD Engineering Resources ("CER") has filed a Motion to Change Venue (Docket No. 14), to which the plaintiff, Arch Insurance Company ("Arch"), has filed a Response in Opposition (Docket No. 18). For the following reasons, the motion is denied.

## BACKGROUND[1]

This action arises from a dispute between the plaintiff, Arch (an insurer), and the defendant, CER (Arch's insured), as to whether insurance policies issued by Arch to CER apply to an underlying litigation against CER brought by Raymond Lee Wagner, Jr. (also a defendant in this action). Arch is a Missouri insurance company with a principal place of business in New Jersey, while CER is a Michigan corporation that provides staffing for auto suppliers and other manufacturers and has a principal place of business in Sterling Heights, Michigan. Mr. Wagner

---

[1] Unless otherwise noted, the facts recounted in this section are drawn primarily from CER's Memorandum of Law in Support of its Motion to Change Venue and accompanying exhibits (Docket Nos. 15–15-11) and Arch's Memorandum in Response to the Motion to Change Venue and accompanying exhibits (Docket Nos. 19–19-6) that are not refuted or contradicted by the opposing party or the record.

1

is an individual who resides in Charleston County, South Carolina.

Arch has petitioned the court for a declaration that it has no duty to indemnify or defend CER in connection with claims and damages asserted against CER by Mr. Wagner in a personal injury suit currently before this court: *Wagner v. International Automotive Components Group North America, Inc.*, No. 3:14-cv-1831 (M.D. Tenn. filed Sept. 12, 2014) (the "Injury Action").

Arch issued two policies to CER in 2013: a Commercial General Liability Insurance policy and a Commercial Excess Liability Insurance policy (the "Policies"). The Policies have effective dates of March 1, 2013 and terms of 12 months. CER alleges that it purchased the Policies from Arch as a result of discussions with agents of the Dudek Insurance Agency ("Dudek") in New Baltimore, Michigan. Specifically, CER asserts that, in January of 2012, roughly a year before the Policies were issued, it solicited a quote for an insurance policy that would cover its staffing business from a Dudek agent, Susan Starnes. (Docket No. 15, at p. 3.) According to CER, Ms. Starnes then provided a quote from an affiliate of Arch for a "Staff Pak" policy, which was advertised as insurance specifically designed and tailored for companies that – like CER – are in the staffing business. (*Id.*) CER claims that it purchased the "Staff Pak" policy from Arch because, based on these representations, it believed that the "Staff Pak" would cover all aspects of its business.[2] (*Id.*)

---

[2] In support of its factual claims regarding the discussions and negotiations leading to the purchase of the Policies, CER attaches a series of emails between it and Ms. Starnes to its Memorandum of Law in Support of its Motion to Change Venue. (*See* Docket Nos. 15-3–15-5 (Exs. C–E).) Arch argues that the court should not consider these emails in deciding whether to transfer venue because they have not been authenticated and are not supported by any affidavit. (Docket No. 19, at p. 6.) Although Arch questions the weight that should be given to these emails in the court's analysis, Arch does not appear to dispute the fact that there were insurance agents located in Michigan who were instrumental in selling the Policies to CER and who are, therefore, potential witnesses in this action. (*See id.*) The court will therefore consider these basic facts about the potential witnesses in its analysis below.

On August 8, 2014, Mr. Wagner filed the Injury Action against CER and International Automotive Components Group North America, Inc. ("IAC").[3] The Injury Action arises from an incident that occurred at a factory in Springfield, Tennessee (the "Springfield Plant") while Mr. Wagner was working there on a temporary basis. At the time of the incident, Mr. Wagner claims that he was a resident of Tennessee and an employee of True Blue, Inc. d/b/a Labor Ready ("True Blue") and that he was assigned by True Blue to work at the Springfield Plant. Mr. Wagner alleges that the Springfield Plant, which manufactures components that are placed into new automobiles, was owned by IAC and operated jointly by IAC and CER. Mr. Wagner further alleges that True Blue entered into a contract with IAC and/or CER to provide Mr. Wagner's services at the Springfield Plant. Mr. Wagner does not allege that he had any direct contractual relationship with CER, and the records in this action and the Injury Action contain no evidence of a direct contractual relationship between Mr. Wagner and CER.

On August 11, 2013, Mr. Wagner claims that he was working at the Springfield Plant and performing tasks alongside an employee of either IAC or CER. As Mr. Wagner was placing material into a mold press, he alleges that the machinery resumed operation and crushed his body, resulting in serious and permanent injuries. According to Mr. Wagner, IAC and CER had exclusive control over the ownership, installation, maintenance, and servicing of the machinery that caused his injury. The Injury Action advances claims against IAC and CER based upon

---

[3] The background information regarding the Injury Action and the relationship between Mr. Wagner and CER is based on the allegations in the Amended Complaint in the Injury Action as cited and discussed by the parties in their briefings, (Docket No. 15, at pp. 3–4 (citing the Amended Complaint in the Injury Action); Docket No. 19, at p. 2 (citing the Second Amended Complaint in the Injury Action, which is similar to the Amended Complaint in all relevant respects), and as construed by the court in its Memorandum discussing the court's reasons for denying CER's and its co-defendant's Joint Motion to Dismiss the Amended Complaint in the Injury Action. *Wagner*, No. 3:14-cv-1831, 2015 WL 236500, at *1–2 (M.D. Tenn. Jan. 15, 2015).

multiple theories of liability, each sounding in simple negligence.

On September 10, 2014, after Mr. Wagner filed the Injury Action, CER sent notice and a copy of Mr. Wagner's complaint to Arch requesting coverage pursuant to the Policies. On September 16, 2014, Arch denied coverage to CER, and CER proceeded to defend itself in the Injury Action. On October 24, 2014, shortly after Arch denied coverage to CER, Mr. Wagner filed the Amended Complaint in the Injury Action.[4]

On May 13, 2015, almost a year after Mr. Wagner filed the Amended Complaint, Arch sent a letter to CER advising CER that it had reconsidered its coverage position and would provide CER with a defense under a reservation of rights. Arch claims that the reconsideration of coverage position was the result of Mr. Wagner's filing an Amended Complaint, which Arch had not known about because, according to Arch, CER had not forwarded the Amended Complaint to Arch as instructed. (Docket No. 19, at pp. 2–3.)

Shortly thereafter, on June 5, 2015, Arch filed the present action for declaratory relief against CER and Mr. Wagner, requesting a declaration that it has no duty to indemnify or defend CER in connection with the Injury Action. (Docket No. 1.) CER filed an Answer to the Petition for Declaratory Relief on August 27, 2015 (Docket No. 10) and a Motion to Change Venue to the Eastern District of Michigan on September 15, 2015 (Docket No. 14). In its Memorandum in Support of the Motion to Change Venue, CER argued that the court should transfer this suit because the Eastern District of Michigan would be more convenient for the parties and witnesses and better serve the interests of justice. (Docket No. 15, at pp. 1–2, 7–11.) Arch filed a Response in Opposition to CER's Motion along with an accompanying Memorandum, arguing that the court cannot transfer Arch's suit to the Eastern District of Michigan because that court

---

[4] On June 9, 2015, Mr. Wagner filed a Second Amended Complaint in the Injury Action that contains the same allegations with regard to CER as the Amended Complaint.

4

does not have jurisdiction over one of the defendants – Mr. Wagner.  (Docket No. 18; Docket No. 19, at pp. 4–5.)

## **ANALYSIS**

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  With this statute, "Congress intended to give district courts the discretion to transfer cases on an individual basis by considering convenience and fairness." *Kerobo v. Sw. Clean Fuels, Corp.*, 285 F.3d 531, 537 (6th Cir. 2002).

In ruling on a motion to transfer venue under § 1404(a), a "district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'" *Moore v. Rohm & Haas Co.*, 446 F.3d 643, 647 n.1 (6th Cir. 2002) (quoting *Moses v. Bus. Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991)); *accord Kerobo*, 285 F.3d at 537. The Sixth Circuit has suggested that relevant factors to consider include: (1) the convenience of the parties and witnesses; (2) the accessibility of evidence; (3) the availability of process to make reluctant witnesses testify; (4) the costs of obtaining willing witnesses; (5) the practical problems of trying the case most expeditiously and inexpensively; and (6) the interests of justice. *Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009).  The moving party bears the burden of establishing that these factors weigh in favor of transferring venue*. See, e.g.*, *Picker Int'l, Inc. v. Travelers Indem. Co.*, 35 F. Supp. 2d 570, 573 (N.D. Ohio 1998); *Blane v. Am. Investors Corp.*, 934 F. Supp. 903, 907 (M.D. Tenn. 1996).

Even if these factors weigh strongly in favor of transferring venue, a court may only

transfer a suit under § 1404(a) to a court "where it might have been brought" in the first place. An action "might have been brought" in a transferee court if that court has subject matter and personal jurisdiction over the defendants. *See, e.g.*, *Sunbelt Corp. v. Noble, Denton & Assocs., Inc.*, 5 F.3d 28, 33 (3d Cir. 1993) (concluding that the district court lacked the authority to transfer a case to a jurisdiction in which the court did not have personal jurisdiction over a co-defendant); *Kay v. Nat'l City Mortg. Co.*, 494 F. Supp. 2d 845, 849 (S.D. Ohio 2007) ("An action 'might have been brought' in a transferee court if: (a) [t]he court has jurisdiction over the subject matter of the action, (b) [v]enue is proper there, and (c) [t]he defendant is amenable to process issuing out of the transferee court.").

CER argues that the convenience of the parties and witnesses and public interest concerns weigh strongly in favor of transferring venue to the Eastern District of Michigan. In support, CER notes that (1) the witnesses who could testify to the intended scope of the coverage under the Policies, including non-party witnesses at Dudek, are located in Michigan; (2) documents and communications between CER, Dudek, and Arch are located in Michigan; (3) the dispute surrounds a contract entered into in Michigan and must, therefore, be interpreted under Michigan law; and (4) Arch's choice of forum should not be given much, if any, weight because, as an insurance company denying coverage, it is the real defendant in these proceedings. (Docket No. 15, at pp. 8–11.) These points are well taken, and they do appear to weigh heavily in favor of transferring the suit to the Eastern District of Michigan.

The court cannot, however, grant such a transfer under § 1404(a), because the Eastern District of Michigan does not have jurisdiction over Mr. Wagner and is, therefore, not a court in which this suit "might have been brought." Personal jurisdiction exists over a defendant "if the defendant is amenable to service of process under the [forum] state's long-arm statute and if the

exercise of personal jurisdiction would not deny the defendant[] due process." *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) (quoting *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992)). Even assuming that Mr. Wagner's relationship with CER satisfies Michigan's long-arm statute (and it likely does not),[5] the Eastern District of Michigan's jurisdiction over Mr. Wagner remains limited by principles of due process. A court cannot exercise personal jurisdiction over a defendant unless the defendant possessed such "minimum contacts" with the forum state that exercising jurisdiction would comport with "traditional notions of fair play and substantial justice." *Beydoun v. Wataniya Rests. Holding, Q.S.C.*, 768 F.3d 499, 505 (6th Cir. 2014).

The Sixth Circuit applies a three-pronged test to determine whether a defendant has sufficient "minimum contacts" with a state to justify the exercise of jurisdiction over the defendant in that state:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Id.* (quoting *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)). Purposeful availment happens when the defendant personally takes actions that create a "substantial connection" with the forum state such that he can "reasonably anticipate being haled into court there." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 889 (6th Cir. 2002)

---

[5] Michigan's long-arm statute provides for jurisdiction over those whose conduct includes, among other things: "[t]he transaction of any business within the state," or "[e]ntering into a contract for services to be rendered . . . *in the state* by the defendant." Mich. Comp. Laws Ann. § 600.705 (emphasis added). As discussed *infra*, there is no evidence in the record suggesting that Mr. Wagner transacted any business or contracted to render any services in the State of Michigan.

7

(quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)).

The record reflects no connection between Mr. Wagner and the State of Michigan sufficient to justify the exercise of personal jurisdiction over him there, and CER has, therefore, failed to meet its burden of demonstrating that a transfer of venue is appropriate under § 1404(a). Although Mr. Wagner's relationship with CER is not entirely clear from the record in this action (or in the Injury Action), it appears that his only contact with CER was through True Blue, his employer.[6] Mr. Wagner does not appear to have ever personally entered into a contractual relationship with CER, and neither the allegations of the Amended Complaint in the Injury Action nor the record in this action suggest that Mr. Wagner even *knew* that he was being staffed at the Springfield Plant through a contract with a Michigan-based company.[7] Based on the evidence currently before it, the court cannot say that Mr. Wagner purposefully availed himself of the privilege of acting in Michigan or that he could reasonably have anticipated being haled into court there. Accordingly, the court cannot conclude that Arch's suit "might have been brought" in the Eastern District of Michigan and, therefore, cannot transfer the suit to that court.

---

[6] The court has not been able to find information in the record regarding where True Blue is incorporated or has its principal place of business.

[7] CER had the opportunity to submit evidence into the record that would demonstrate that the Eastern District of Michigan would have personal jurisdiction over Mr. Wagner, but it has not done so. CER has not filed a Reply to respond to Arch's argument that CER's preferred forum lacks personal jurisdiction over Mr. Wagner, nor has CER even sought the leave of the court to do so in the two months since Arch filed its response.

Enter this 18th day of November 2015.

_____
ALETA A. TRAUGER
United States District Judge